UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LOBDELL, on behalf
of himself, and all others similarly situated

Case No. 24-cv-11450

     Plaintiff,                       Hon.

vs.

WHITE CAP, L.P., a Florida Limited Partnership
(f/k/a HD Supply Construction Supply);
WHITE CAP SUPPLY HOLDINGS, LLC, a
Delaware Limited Liability Company,

     Defendant.

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Adam S. Akeel (P81328)
Attorney for Plaintiff
888 W. Big Beaver Road, Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
adam@akeelvalentine.com

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, MATTHEW LOBDELL, individually and on behalf of all others similarly situated, by and through his attorneys, Akeel & Valentine, PLC and state as follows:

1

## NATURE OF CLAIM

1.     The Americans with Disabilities Act ("ADA") prohibits employers from requiring employees to submit to involuntary medical examinations. An employee does not "voluntarily" submit to a medical examination when such an examination is provided under threat of financial penalty.

2.     For over a decade, Defendants forced their employees to submit to involuntary medical examinations and biometric testing under threat of financial penalty. This unlawful employment practice continues today. An employee refusing to submit to an annual medical examination and biometric testing is subjected to a yearly financial penalty of *at least* $1,500.00.

3.     This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008, to correct this unlawful employment practice and to provide appropriate relief to Matthew Lobdell ("Plaintiff" or "Lobdell") who was adversely affected by such a practice.

4.     This is also a class action brought on behalf of Defendants' current and former employees who are or were required to participate in annual physical and biometric testing to avoid a financial penalty.

2

## PARTIES AND JURISDICTION

5.      Plaintiff, Matthew Lobdell, was an employee of Defendant from June of 2020 to February of 2024, and is a resident of Oakland County, Michigan.

6.      On information and belief, Defendant, White Cap, L.P., at all relevant times herein, was and is a Limited Partnership organized under the laws of Florida, with a principal place of business in Oakland County, Michigan.

7.      On information and belief, Defendant, White Cap Supply Holdings, LLC, at all relevant times herein, was and is a Limited Liability Company organized under the laws of Delaware, with a principal place of business in Oakland County, Michigan.

8.      On information and belief, Defendant, White Cap Supply Holdings, LLC is a related entity of Defendant, White Cap, L.P. Both entities own, operate, and conduct substantial business in Oakland County, Michigan, and will both hereinafter be collectively referred to as "White Cap".

9.      White Cap operates approximately 450 branches across North America, and employs more than 9,500 employees.

10.      This Honorable Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to Section 107 of the ADA,

42 U.S.C. § 12117, which incorporates by reference Section 706(f)(2) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(2).

11.     Discovery may reveal that Defendants' conduct also violated Section 207(a)(1) of the Genetic Information Nondiscrimination Act, 42 U.S.C. §2000ff-6(a)(1) ("GINA").

12.     Venue is proper in this Honorable Court as Defendants conduct business within the Eastern District of Michigan and are subject to personal jurisdiction within the Eastern District of Michigan and a substantial part of the events giving rise to the claims alleged occurred in the Eastern District of Michigan, *see* 29 U.S.C. § 1391(b).

13.     In September of 2023 and May of 2024, Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff asserted Charges of Discrimination under Title VII (individually), the ADA (individually and on behalf of a class), and GINA (individually and on behalf of a class).

14.     The EEOC issued Right to Sue Notices on March 18, 2024 and May 6, 2024.

## **STATEMENT OF FACTS**

15.     In or around June of 2020, Plaintiff was hired to work as a Licensed Commercial Driver for CSI Geoturf, at its Highland, Michigan location.

16.     In 2022, White Cap acquired CSI Geoturf.

17.     In or around June of 2022, Plaintiff was transitioned over to White Cap's self-funded health benefits plan ("HBP").

18.     Upon transition, Plaintiff was informed he would be charged $68.46 per pay period, as part of White Cap's 2022 HBP.

19.     In or around September of 2022, Plaintiff learned that White Cap intended to impose an additional fee of *at least* $1,500.00 per year on each employee who refused to submit to annual medical exams and biometric testing ("Medical Examinations" or "Medical Examination Policy").

20.     Plaintiff informed White Cap that he opposed White Cap's demand to submit to Medical Examinations or face a financial penalty.

21.     Plaintiff informed White Cap that he believed such a practice to be unethical and illegal.

22.     Plaintiff refused to submit to Medical Examinations in 2022.

23.     As a result, Plaintiff was informed that he would be charged $131.30 (an increase of $62.84, or *92% more*) per pay period in 2023.

24.     Plaintiff was told that, as a result of refusing to submit to Medical Examinations, White Cap would decrease the amount of wages Plaintiff would receive in each paycheck.

25.     White Cap informed Plaintiff that no changes could be made to his health plan until the following year; meaning, Plaintiff would suffer the consequences of refusing to submit to Medical Examinations throughout all of 2023.

26.     Throughout 2023, Plaintiff was subjected to biweekly financial penalties of $62.84 for rejecting Defendants' request that he submit to Medical Examinations.

27.     Plaintiff again refused to submit to Medical Examinations in 2023, resulting in per paycheck deductions of $131.96 in 2024.

28.     Plaintiff continued to voice his objections to the practice of subjecting him to financial penalties for refusing to agree to voluntarily submit to Defendants' Medical Examinations.

29.     Plaintiff opposed such practices internally, to management and HR, and externally, to state and federal agencies, attorneys, and legislators.

30.     Plaintiff believed such a practice was unethical and infringed on his federal civil rights.

31.     In response to Plaintiff's concerns, White Cap (1) informed Plaintiff that it was self-insured and requested the Medical Examinations so to minimize medical claim costs paid by White Cap; (2) informed Plaintiff that it had engaged in the practice of requiring such Medical Examinations from all employees for more

than a decade; and (3) alleged that it was within its right to increase deductions from Plaintiff's paychecks (i.e. pay Plaintiff less) if he refused to submit to such Medical Examinations.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

33.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of all current and former White Cap employees who are or were required to submit to Medical Examinations or be subjected to financial penalties, between 2021 and present ("Class or "Class Members"). Plaintiff seeks declaratory and injunctive relief, compensatory damages, non-economic damages, punitive damages, costs, and attorney's fees.

34.     Certification under Rule 23(b)(2) is appropriate because White Cap has acted or refused to act on grounds that apply generally to the Class and final injunctive and declaratory relief is appropriate respecting the Class as a whole. The policy that Class Members either submit to Medical Examinations or be subjected to financial penalties is uniform, thereby making declaratory and injunctive relief appropriate to the Class as a whole.

35.     Certification under Rule 23(b)(3) is appropriate because Plaintiff seeks monetary damages on behalf of Class Members and because common questions of

law and fact predominate over individualized inquiries and a class action is a superior method for adjudication. The Medical Examination Policy was uniformly applied to all Class Members.

36.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown, Plaintiff believes there to be more than 9,500 Class Members. The exact number of class members can only be ascertained through appropriate discovery.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class Members. Among the questions of law and fact common to the Class are:

a.    Whether White Cap's acts as alleged herein violate the ADA;

b.    Whether the Medical Examination Policy violates the ADA;

c.    Whether the medical examinations and biometric testing are voluntary, as required by the ADA;

d.    The nature and extent of the class-wide injury and the appropriate measure of damages for the Class; and

e.    Whether declaratory/injunctive relief and punitive damages are warranted.

38.    Plaintiff's claim arises from the same Medical Examination Policy and course of conduct on the part of White Cap, and Plaintiff's claim is based on the

same legal and remedial theories as those of the proposed Class and involve similar factual circumstances. Further, Plaintiff seeks common forms of relief for himself and members of the Class, including injunctive and declaratory relief, compensatory damages, and punitive damages.

39. Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class are, or were, similarly affected by White Cap's violation of the ADA complained of herein. Plaintiff was affected by White Cap's violation of the ADA in the same manner as other class members. Plaintiff's and Class Members' right to voluntarily participate in the Medical Examinations was, and has been, denied by White Cap's imposition of a financial penalty for non-participation. And, as a result, Plaintiff and Class Members have incurred lost wages for non-participation and non-economic damages whether they participate in the Medical Examinations against their will or refuse to participate in the Medical Examination Policy's unlawful and discriminatory mandates.

40. Plaintiff will fairly and adequately protect the interests of class members and has retained counsel competent and experienced in class action litigation and the claims asserted herein.

41. Common questions of law and fact predominate over any questions affecting only individual members of the Class. Specifically, questions concerning

whether White Cap violated the ADA predominate over any individualized questions.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable and individual class members may lack the financial resources to vigorously prosecute this action. Class treatment will obviate the need for unduly duplicative litigation that might result in inconsistent judgments.

43.     Plaintiff's claims are typical of the claims of the members of the Class, and he is an adequate class representative.

44.     Plaintiff and members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.

45.     Plaintiff has retained counsel, competent and experienced in employment law, civil rights, and class actions, and intends to prosecute this action vigorously.

46.     Plaintiff seeks a declaration that his, and the class members', rights were violated, and an injunction preventing Defendants from implementing such illegal terms and conditions in the workplace.

47.     Plaintiff also seek punitive damages, and attorney fees and costs to punish this incredibly invasive and violative employment practice, and ensure Defendants will not subject workers to the same illegal conduct in the future.

48.    Plaintiff also seeks compensatory damages on behalf of himself and each class member, including lost wages, other economic damages, and non-economic damages.

## COUNT I
## VIOLATION OF THE ADA
*On behalf of Plaintiff and Class Members*

49.    Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

50.    White Cap is a covered entity under 42 U.S.C. § 12111(2) and § 12111(5)(A) because it is an employer engaged in an industry affecting commerce with 15 or more employees.

51.    At all relevant times herein, White Cap was Plaintiff's employer.

52.    At all relevant times herein, White Cap also employed more than 9,500 employees throughout North America.

53.    At all relevant times herein, White Cap required all of its employees (the Class Members) to submit to annual physical and biometric testing, or be subjected to biweekly financial penalties.

54.    Due to the manner in which these Medical Examinations are requested, employees who submit to them do not do so voluntarily.

55.    By requesting Medical Examinations be conducted to avoid financial penalties, the Defendants' Medical Examination Policy violates the ADA.

56.    Because these Medical Examinations are not, and were not, conducted voluntarily, they violate(d) the ADA.

57.    The Medical Examinations include blood draws, physical examinations, and other medical, health-related, and invasive testing.

58.    Employees that do not agree to submit to such Medical Examinations are financially penalized.

59.    White Cap's threat to impose financial penalties on employees who do not agree to submit to such Medical Examinations violates the ADA.

60.    White Cap requires medical examinations, biometric testing, and makes inquiries of employees in violation of 42 U.S.C. § 12112(d)(4)(A) and (B) because such examinations and inquiries are required and are not "voluntary" components of White Cap's HBP.

61.    White Cap's Medical Examinations included disability-related inquiries and medical examinations within the meaning of the ADA.

62.    The testing required under White Cap's HBP includes medical examinations within the meaning of the ADA because the required testing is administered by a health care professional or in a medical setting and seeks information about an individual's physical or mental impairment or health. The testing requires blood draws, cholesterol testing, and other biometric data.

63.    The Medical Examinations are considered "medical examinations" within the meaning of Section 102(d)(5) of the ADA, 42 U.S.C. § 12112(d)(4)(A) because (a) they require a blood draw; (b) they are performed by health care professionals; (c) they are interpreted by health care professionals; (d) they are designed to evaluate and illicit sensitive information of an employee's physical and/or mental health; and (e) medical equipment is used.

64.    The Medical Examinations, and subsequent inquiries made related to those Medical Examinations, are medical inquiries within the meaning of the ADA because they are likely to elicit information about a disability.

65.    White Cap imposes a fine of *at least* $1,500.00 on those employees who do not submit to medical inquiries and examinations.

66.    In 2023, White Cap subjected Plaintiff and certain other class members to financial penalties of more than $1,600.00 for refusing to submit to the Medical Examinations.

67.    White Cap's Medical Examinations are not intended to determine whether the employees can perform the essential functions of their jobs or pose a direct threat to the health or safety of themselves or others.

68.    White Cap's Medical Examinations are not job-related or consistent with business necessity.

69.     White Cap imposes a penalty upon employees to make them participate in Medical Examinations.

70.     White Cap's Medical Examinations are not voluntary.

71.     White Cap's Medical Examinations are unlawful examinations in violation of Section 102(d)(5) of the ADA, 42 U.S.C. § 12112(d)(4)(A).

72.     White Cap's acts, as described herein, were and are intentional.

73.     White Cap's acts, as described herein, were and are done with malice or reckless disregard of Plaintiff's, and Class Members', federally protected rights.

74.     The effect of the practice complained of herein, has been to subject Plaintiff and Class Members to significant financial penalties for refusing to submit to unlawful medical examinations, or to agree to intrusive medical inquiries and examinations so to avoid incurring significant financial penalties.

75.     White Cap retaliated against Plaintiff, and certain other Class Members, for refusing to submit to unlawful medical examinations each time it deducted money from Plaintiff's, and certain other Class Members', paychecks as a penalty for refusing to submit to such examinations.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests that this Honorable Court:

(a) Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) Designated Matthew Lobdell as the representative of the Rule 23 Class and the undersigned counsel as counsel for the Class;

(c) Declare White Cap's conduct to be in violation of the ADA;

(d) Enter a permanent injunction prohibiting White Cap from continuing to impose a minimum $1,500.00 fine on those who do not submit to medical examinations, biometric testing, and other related medical inquiries;

(e) Enter a permanent injunction prohibiting White Cap from causing employees' medical data to be transferred to third-parties without employees' consent, which must not be obtained under threat of a monetary or other penalty;

(f) Enter an injunction designed to protect and monitor Class Members' privacy in the context of White Cap's health benefits plan, including but not limited to, purging medical and any genetic data previously collected through White Cap's health benefit plan;

(g) Award compensatory damages to Plaintiff and Class Members;

(h) Award punitive damages;

(i) Award expenses, including reasonable attorney's fees and litigation costs; and

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

AKEEL & VALENTINE, PLC

/s/:  SHEREEF H. AKEEL

By:    Shereef H. Akeel (P54345)
Adam S. Akeel (P81328)
Attorneys for Plaintiffs
888 West Big Beaver Road, Ste. 350
Troy, MI  48084
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com

DATED: June 3, 2024

16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LOBDELL, on behalf
of himself, and all others similarly situated

                                        Case No.  24-cv-11450

      Plaintiff,                               Hon.

vs.

WHITE CAP, L.P., a Florida Limited Partnership
(f/k/a HD Supply Construction Supply);
WHITE CAP SUPPLY HOLDINGS, LLC, a
Delaware Limited Liability Company,

      Defendant.

---

AKEEL & VALENTINE, PLC
Shereef H. Akeel (P54345)
Adam S. Akeel (P81328)
Attorney for Plaintiff
888 W. Big Beaver Road, Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
adam@akeelvalentine.com

---

**JURY DEMAND**

---

     **NOW COMES** Plaintiff, MATTHEW LOBDELL, on behalf of himself and

others similarly situated, and hereby demand a trial by jury in the above-captioned

cause of action.

Respectfully submitted,

AKEEL & VALENTINE, PLC

/s/:  SHEREEF H. AKEEL

By:   Shereef H. Akeel (P54345)
      Adam S. Akeel (P81328)
      Attorneys for Plaintiffs
      888 West Big Beaver Road, Ste. 350
      Troy, MI  48084
      (248) 269-9595
      Shereef@akeelvalentine.com
      Adam@akeelvalentine.com

DATED:  June 3, 2024